UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | SA CV 07-462 AHS |
| | ) | SA CR 01-225 AHS |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | ORDER DENYING PETITIONER'S |
| | ) | MOTION TO VACATE, SET ASIDE |
| CONRAD ALBERT KROUSE III, | ) | OR CORRECT SENTENCE UNDER 28 |
| | ) | U.S.C. § 2255 |
| Defendant/Petitioner. | ) | |

**I.**

**PROCEDURAL BACKGROUND**

On April 26, 2002, following a jury trial, Conrad Albert Krouse III ("petitioner") was convicted of possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c); possession with intent to distribute marijuana in violation of 21 U.S.C. 841(a)(1); and, possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1). On August 26, 2002, petitioner was sentenced to a term of 161 months imprisonment and three years of supervised release. On August 28, 2002, petitioner filed a Notice of Appeal.

On June 4, 2004, Court of Appeals for the Ninth Circuit affirmed petitioner's convictions.  On August 3, 2005, however, the Ninth Circuit granted a limited remand of petitioner's sentence for further proceedings consistent with United States v. Ameline, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc).  On April 7, 2006, the Court resentenced petitioner to a term of 144 months imprisonment.  On April 18, 2006, the Court's judgment and commitment order was entered on the criminal docket.

On April 26, 2007, petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 ("2255 Motion").  The Court set a briefing schedule on May 7, 2007.  On August 31, 2007, the government filed a motion to dismiss for failure to comply with § 2255's one-year statute of limitations. On September 27, 2007, petitioner filed opposition.  The government filed no reply.  On October 18, 2007, the Court denied the government's motion and issued a revised briefing schedule.  On January 9, 2008, the government filed opposition to petitioner's 2255 Motion.  On February 28, 2008, petitioner filed a reply.

**II.**

**SUMMARY OF PARTIES' CONTENTIONS**

**A.      Petitioner's Motion**

The Court must set aside the judgment against petitioner because trial counsel's ineffective assistance violated petitioner's rights under the Sixth Amendment in four respects.[1]

---

[1] The four grounds raised by petitioner relate chiefly to representation provided by H. Dean Steward.  The fourth, however, also involves Ed Hall, who preceded Mr. Steward in representing petitioner.

### 1.   Failure to Adequately Prosecute <u>Franks</u> Motion

Petitioner's criminal prosecution was based on narcotics and firearms discovered in the process of executing a search warrant on July 25, 2001, for stolen arcade games, vending machines, and other property (collectively "the games") belonging to Larry Herrick.  The games were allegedly installed inside The Happy Dutchman, a bar owned by petitioner, pursuant to an agreement between Herrick and petitioner to split the games' profits.  When the games went missing, Herrick accused petitioner of stealing them.  The Buena Park Police Department ("BPPD") subsequently initiated an investigation.

Though prior to trial, on April 1, 2002, counsel brought a motion to suppress the evidence obtained during the July 25, 2001 search, he failed to argue that Detective Tamra Alishouse ("Det. Alishouse" or "affiant"), who investigated the incident, intentionally omitted information and made false statements in the affidavit used to obtain the warrant.  <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).  These omissions and false representations are evident from comparing Det. Alishouse's affidavit with the police report she prepared regarding the investigation.  Affiant stated that she "interviewed current employees and ex-employees from the bar whom . . . *all* confirmed that the machines and games in the bar belonged to [Larry] Herrick." (<u>See</u> Motion, Ex. 8 (emphasis added)).  However, the police report reflects that there were at least two employees, Kelly Bridges and Jackie Morse, who stated that Herrick never placed any games in petitioner's bar and that those games which were at the bar belonged to a different individual, Jack Thomas.

(Id., Ex. 10, at 2).  Affiant's police report also states that she
spoke by telephone with an individual purporting to be Thomas who
confirmed the games belonged to him (affiant was unable to confirm
the individual's identity).  (Id.).

        Counsel's failure to raise this inconsistency as a
grounds for challenging the validity of the search warrant was
acknowledged in the unpublished portion of Court of Appeals'
opinion - the court did not consider the issue because it was not
raised below.  (Id., Ex. 13).  Had the issue been properly raised,
the motion would have been found meritorious.  Here, where
affiant's representations sought to establish evidence of theft,
the misstatements and omissions were material to the probable cause
determination.  United States v. Chavez-Miranda, 306 F.3d 973, 979
(9th Cir. 2002).  The fact that the police report contained
evidence plainly contrary to statements made in the affidavit,
coupled with the fact that affiant prepared both, establishes
deliberate falsehood or reckless disregard for the truth.
Petitioner was prejudiced by counsel's failure to move to suppress
the evidence on this basis because excising the false statements
and including the omissions would, at most, give rise to "mere
suspicion," not probable cause.  See United States v. Wanless, 882
F.2d 1459, 1465-66 (9th Cir. 1989); United States v. Vasey, 834
F.2d 782, 788-90.

        **2.   Failure to Conduct Effective Pretrial Investigation**
        Counsel was ineffective in failing to fully investigate
and present evidence that the BPPD's motivation for obtaining a
warrant - even after preliminary determinations by a deputy
district attorney that Herrick's complaint was merely a civil

dispute - related to an ongoing effort to search for drugs at petitioner's home and business. The BPPD had, among other things, previously inquired on multiple occasions whether petitioner possessed or dealt drugs and visited petitioner's bar to interrogate both petitioner and customers, including a customer by the name of Michael Giovannoni. (See Motion, Exs. 17, 18). Petitioner was prejudiced by counsel's failure to investigate because these incidents serve as circumstantial evidence that the misstatements in Det. Alishouse's affidavit were intentional, since they demonstrate an ulterior motive for obtaining the warrant, rather than the stated motive of searching for stolen items.

### 3.    Improperly Advising Petitioner Regarding Admissibility of Prior Conviction

Counsel was ineffective in advising his client that his prior arrest and conviction on a narcotics trafficking charge would not "under any circumstances" be admissible at trial and then proceeding to open the door to government cross-examination on the very issue by asking petitioner, "Mr. Krouse, are you a drug dealer?" (See Motion, Ex. 20). Counsel also failed to lodge objections to government's questions regarding petitioner's prior conviction. The resulting testimony was highly prejudicial because it undercut petitioner's credibility, and concomitantly, his defense that the narcotics found during the search belonged to others living in his home. These errors fell below a minimum standard of performance for criminal attorneys. See National Legal Aid and Defender Association ("NLADA") Guidelines 1.2(a), 7.1(34), 7.5(57), 7.5(60).

//

####            4.    Failure to Learn and Advise Petitioner that Agreeing
                      to a Continuance of Trial Would Require Remaining in
                      Custody for Three Months

On January 16, 2002, a warrant for petitioner's arrest was issued based on a Petition for Action (the "petition") seeking to revoke petitioner's pretrial release.  On the same day, the government obtained petitioner's and his counsel's signature to file a stipulation to continue the trial (the "stipulation").  The Court ordered the trial continued based on the stipulation on January 17, 2002.  Petitioner was subsequently arrested on January 30, 2002.  When petitioner later acquired new counsel, H. Dean Steward, and moved to dismiss the indictment due to Speedy Trial Act violations, the government argued petitioner's prior consent to the stipulation represented a "signed waiver" of his speedy trial rights.  Petitioner, however, would not have agreed to the stipulation if he knew he would be in custody for three months pending trial.  Petitioner's trial counsel should have but did not argue that the waiver was not intelligent or knowing because petitioner did not know he would be subject to pretrial detention.  Pretrial incarceration has been recognized as a form of prejudice to be avoided by the Sixth Amendment right to a speedy trial and the Speedy Trial Act.  See Barker v. Wingo, 407 U.S. 514, 532, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); United States v. Beamon, 992 F.2d 1009, 1114 (9th Cir. 1993).

**B.        Government's Opposition**

Petitioner cannot make the requisite showing that the misstatements and omissions he deduces from comparing Det. Alishouse's affidavit with the police report were recklessly or

intentionally made or that they are material.  See <u>United States v.</u>
<u>Collins</u>, 61 F.3d 1379, 1384 (9th Cir. 1995); <u>United States v.</u>
<u>Botero</u>, 589 F.2d 430, 433 (9th Cir. 1978); <u>United States v. Hole</u>,
564 F.2d 298, 302 (9th Cir. 1977).  The statements of employees
Bridges and Morse, in particular, are contradicted by the fact that
they prepared inventory sheets and video game collection reports
for Herrick's games while these were in petitioner's bar.  In any
case, even adding the alleged omissions to, and removing
misstatements from, the affidavit would not undermine the probable
cause determination.  Accordingly, because the motion petitioner
claims should have been made would have failed, there was no
ineffective assistance of counsel.

Trial counsel, furthermore, was not ineffective in
failing to interview additional witnesses and discover additional
facts regarding BPPD's alleged ongoing effort to arrest petitioner
for suspected drug activities.  Counsel retained an investigator
and was aware of some of the facts now raised by petitioner but
made a strategic choice not to incorporate them into petitioner's
case.  This decision fell within the wide range of professionally
competent assistance afforded by the Sixth Amendment.

Trial counsel did not render ineffective assistance in
asking petitioner whether he is a drug dealer.  The question had
the strategic purpose of bolstering defendant's credibility and
deflecting culpability to other persons who resided with
petitioner, a common strategy in criminal trials.  See <u>United</u>
<u>States v. Crespo de Llano</u>, 838 F.3d 1006, 1014 (9th Cir. 1988).
The fact that the strategy may not have succeeded does not render
counsel's performance constitutionally defective.  Moreover, the

evidence of petitioner's guilt was so overwhelming there is no reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

Lastly, counsel was not ineffective in advising petitioner regarding his speedy trial rights. As the Court has previously determined, petitioner and his counsel contemplated continuing the trial to April or May 2002 as early as December 10, 2001, and petitioner did not try to "rescind" this agreement to waive his speedy trial rights until February 6, 2002, when he was incarcerated. Petitioner's consent to the continuance was knowing and voluntary. When plaintiff is the "moving force" behind the granting of a continuance, as he was here, he is estopped from raising the continuance as a speedy trial violation. <u>United States v. Gallardo</u>, 773 F.2d 1496, 1506 (9th Cir. 1985).

Even absent defendant's consent, counsel's stated need for trial preparation in the stipulation provided the Court an adequate factual basis for finding that the "ends of justice" favored excluding the extension of time under the Speedy Trial Act. <u>See</u> 18 U.S.C. §§ 3161(h)(8)(A), 3161(h)(8)(B)(iv). Defendant's pretrial incarceration for three months was not so oppressive as to render the Court's ends-of-justice finding erroneous. <u>United States v. Lam</u>, 251 F.3d 852, 860 (9th Cir. 2001).

C.        **Petitioner's Reply**

In support of its contention that affiant's misstatements and omissions were the product of negligence or mistake, the government cites <u>Collins</u>, <u>Botero</u>, and <u>Hole</u>. These cases are distinguishable and, in the case of <u>Hole</u>, predate <u>Franks</u> and thus have no precedential value. The record makes clear that affiant's

material omissions were intentional or, at minimum, reckless. Government's argument that Morse's and Bridges' statements are not credible because they purportedly signed inventory sheets and game collection reports is unavailing, since affiant did nothing to confirm the veracity of the signatures even though she could have readily contacted the individuals.

The government largely fails to rebut petitioner's argument that counsel failed to conduct effective pretrial preparation, emphasizing the fact that trial counsel hired an investigator. This is not evidence of constitutionally effective pretrial investigation. Moreover, contrary to the government's characterization, counsel did not state in his declaration that he made a strategic decision to limit pretrial investigation.

The government also fails to rebut the fact that counsel's deficient performance with regard to petitioner's prior conviction prejudiced him. No case cited by the government presents a situation like this one, where an attorney is aware of a prior drug dealing conviction, advises petitioner that it will not be admitted, and then asks a question that opens the door to its admission, resulting in significant damage to petitioner's credibility and defense.

Lastly, there is no proof that the ninety-day delay for trial was justified. Though the government emphasizes the purpose of the continuance was trial preparation, the Court ordered the continuance relying on petitioner's waiver. Even assuming petitioner were the moving force behind the continuance, it does not establish that the decision made in ignorance of the consequences was voluntary or a knowing and intelligent waiver of

1  the right to a speedy trial.

2                              **III.**

3                          **DISCUSSION**

4  **A.        Legal Standard**

5          To prevail on a claim of ineffective assistance of

6  counsel, a petitioner must show that, considering all of the

7  circumstances:  (1) trial counsel's performance fell below an

8  objective standard of reasonableness; and (2) the defective

9  performance prejudiced petitioner, meaning that, but for counsel's

10 errors, the results of the proceeding would have been different.

11 See Strickland v. Washington, 466 U.S. 668, 687-90, 104 S. Ct.

12 2052, 80 L. Ed. 2d 674 (1984).

13         The reasonableness of counsel's performance is measured

14 "under prevailing professional norms." Id. at 688.  In evaluating

15 claims of ineffective assistance of counsel, there is a strong

16 presumption that counsel performed adequately - "[j]udicial

17 scrutiny of counsel's performance must be highly deferential." Id.

18 at 689.  Petitioner bears the burden of overcoming this strong

19 presumption.  Id.  Moreover, counsel's performance is to be

20 evaluated in light of all of the circumstances at the time of the

21 alleged error.  See United States v. Molina, 934 F.2d 1440, 1447

22 (9th Cir. 1991).  The Court does not consider whether another

23 lawyer with the benefit of hindsight would have acted differently

24 than petitioner's trial counsel.  Strickland, 466 U.S. at 689.  The

25 Court instead limits its inquiry to whether petitioner's trial

26 counsel made errors so serious that he failed to function as

27 guaranteed by the Sixth Amendment.  Id.

28         Even assuming that petitioner can establish his counsel's

performance was unreasonable, he must also prove prejudice. Strickland's prejudice prong requires a showing that counsel's deficient performance resulted in actual prejudice to petitioner; that is, petitioner must show counsel acted unprofessionally with "a probability sufficient to undermine confidence in the outcome." See id. at 687, 694; see also Wiggins v. Smith, 539 U.S. 510, 518, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). In the Fourth Amendment context, petitioner satisfies Strickland's prejudice prong by demonstrating that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence. See Belmontes v. Brown, 414 F.3d 1094, 1121 (9th Cir. 2005); Ortiz-Sandoval v. Clarke, 323 F.3d 1165, 1170 (9th Cir. 2003).

**B.      Ruling**

　　　　**1.   Motion to Suppress**

Failure to file a motion to suppress does not constitute ineffective assistance of counsel if the motion would have been futile. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994). Counsel in this case did file motions to suppress, but did not base the motion on the discrepancies in the record petitioner now identifies.[2] Five prerequisites exist for holding a Franks hearing to examine the validity of a search warrant:

> (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the

---

[2] Petitioner filed two motions to suppress. (See Docket Nos. 36, 67). Both were denied. (See Docket Nos. 52, 68).

veracity of only the affiant must be
challenged; and (5) the challenged statements
must be necessary to find probable cause.

United States v. DiCesare, 765 F.2d 890, 894-95 (9th Cir. 1985);
see also Collins, 61 F.3d at 1379 ("To be entitled to a Franks
hearing, [petitioner] had to make a substantial preliminary showing
that the affidavit contains deliberate or reckless omissions of
facts that tend to mislead, and demonstrate that the affidavit
supplemented by the omissions would not be sufficient to support a
finding of probable cause.").

Petitioner meets the first, second, and fourth of the
DiCesare factors.  The issue thus narrows down to whether
petitioner has made a "detailed offer of proof" regarding the
alleged false statements and omissions, and whether the "challenged
statements must be necessary to find probable cause."  Id.  The
affidavit and police report in question are inconsistent on their
face.  (Motion, Exs. 8, 10).  The affidavit states, "I have
interviewed current employees and ex-employees from the bar whom
have all confirmed that the machines and games in the bar belonged
to Herrick."  (Id., Ex. 8).  The police report, which appears to
have been prepared on the same date as the affidavit, on the other
hand, states:  "On 03/29/01 I spoke to [Morse] at the Happy
Dutchman and she told me that [Herrick] has never had games in the
bar. . . .  I spoke to [Bridges] who also stated that [Herrick] has
never put games in the Happy Dutchman Bar."  (Id., Ex. 10).  The
contrast between these sets of statements, coupled with the fact
that they were prepared by Det. Alishouse on what appears to be the
same day, lends support to the conclusion that the statements in
the affidavit may have been recklessly or intentionally omitted.

12

Petitioner, however, has no other evidence that Det. Alishouse
intentionally perjured herself, aside from his suspicions that Det.
Alishouse was influenced by BPPD officers interested in
investigating petitioner for drug-related activities, discussed
hereinafter.[3]   Nonetheless, the omission of Bridges' and Morse's
statements from the affidavit is significant because, aside from
petitioner's own statements, the affidavit does not contain other
information challenging the credibility of Herrick and persons
listed as corroborating his allegations.  (Id., Ex. 8).
Petitioner's trial counsel acknowledges he should have raised the
issue.  (Declaration of H. Dean Steward ("Steward Decl.") ¶ 5).

Despite counsel's failure to identify what appears to be
an intentional falsehood or omission in the affidavit, petitioner
has not established prejudice.  To succeed in voiding the search
warrant and excluding the evidence obtained during its execution,
petitioner must demonstrate that "with the affidavit's false
material set to one side, the affidavit's remaining content is
insufficient to establish probable cause."  Franks, 438 U.S. at
156.  Where omissions are alleged, probable cause must be found in
the affidavit after the allegedly omitted material is included.
See Collins, 61 F.3d at 1379.  In assessing probable cause, "[t]he
task of the issuing magistrate is simply to make a practical,
common-sense decision whether, given all the circumstances set

---

[3] In her affidavit accompanying government's opposition,
Det. Alishouse (now named Tamra Banks) does not rebut
petitioner's claims that she intentionally or recklessly omitted
information from her affidavit, nor does she provide any other
explanation for the discrepancy.  (See Opposition, Declaration of
Tamra Banks).

13

forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Excising the challenged portion of the affidavit, and including Bridges' and Morris' statements, does not preclude a finding of probable cause. The effect of the statements, when included, is to support petitioner's claim that Herrick never placed the games in the Happy Dutchman and to counter statements by Herrick and others to the contrary. A probable cause determination, however, considers "all the circumstances" set forth in the affidavit. Id. Here, petitioner has established that the statements of Bridges and Morse are contrary to some of the affidavit's content, but not that they are credible. A magistrate considering the affidavit with the statements of Bridges and Morse included could nonetheless securely find that there was a "fair probability" that evidence of theft might be found at petitioner's residence from coupling Herrick's allegations with Sherri Van Drimmelen's assertion that she not only saw, but used, Herrick's games at petitioner's residence. (Motion, Ex. 8). Because petitioner would not have succeeded in his Fourth Amendment claim had counsel prosecuted it, counsel's failure to do so does not warrant setting aside the judgment against petitioner. Belmontes, 414 F.3d at 1121; Ortiz-Sandoval, 323 F.3d at 1170.

### 2.   Deficient Pretrial Investigation

Petitioner next contends counsel was constitutionally deficient in failing to conduct a more thorough pretrial

investigation that purportedly would have revealed ongoing efforts
by the BPPD to uncover drug trafficking activities by petitioner
and others.  "[C]ounsel has a duty to make reasonable
investigations or to make a reasonable decision that makes
particular investigations unnecessary." Strickland, 466 U.S. at
691.  Trial counsel acknowledges he knew of some of the facts
petitioner in his declaration alleges counsel failed to
investigate.  (See Steward Decl. ¶ 7; see also Motion, Ex. 17
(Declaration of Conrad Albert Krouse)).  The remaining facts
identified by petitioner, and which counsel acknowledges he did not
uncover, primarily relate to the BPPD's interaction with
Giovannoni, who identifies himself as a customer of the Happy
Dutchman.  (Motion, Ex. 18 (Declaration of Michael Giovannoni)).
As concluded above, the affidavit supports a finding of probable
cause to search petitioner's home, notwithstanding the alleged
omissions and misstatements.[4]  Even if the allegations detailed in
petitioner's and Giovannoni's declarations were true, discovered by
counsel, and presented to the Court, they would nonetheless have
been insufficient to undermine probable cause.  Accordingly,
petitioner is not entitled to relief on this basis.

### 3.  Admission of Prior Offense at Trial

Though petitioner's trial counsel concedes he opened the
door to examination of petitioner's prior drug conviction, he
denies that he advised petitioner that the conviction would not be

---

[4] The government considers the effect further pretrial
investigation might have had on the extent of evidence available
for trial.  Petitioner, however, limits his allegations regarding
ineffective pretrial investigation to the possibility of
uncovering evidence to supplement his motion to suppress.

admissible at trial under any circumstances.  (Steward Decl. ¶ 8).
He does state, however, that he believes he told petitioner "a
conviction that old would not be used against him."  (Id.).
Regardless of the advisement's precise nature, the Court does not
find the resulting damage to petitioner's credibility a sufficient
basis to find counsel's performance constitutionally ineffective.

        Counsel's strategic decision to attempt to deflect
culpability to other inhabitants of petitioner's residence by
asking petitioner whether he is a drug dealer is entitled to a
significant degree of deference.  This is because "[i]t is all too
tempting for a defendant to second-guess counsel's assistance after
conviction or adverse sentence, and it is all too easy for a court,
examining counsel's defense after it has proved unsuccessful, to
conclude that a particular act or omission of counsel was
unreasonable."  Strickland, 466 U.S. at 689.  Petitioner's
contention that counsel should have known asking the question would
have opened the door to petitioner's prior convictions on cross-
examination relies precisely on the "distorting effects of
hindsight" against which Strickland counsels.  Id.  Strickland, to
the contrary, instructs that the Court must instead "evaluate the
conduct from counsel's perspective at the time."  Id.  Though
counsel states he "remember[s] regretting [the] question, in that
form, as soon as [he] asked it," it was not unreasonable from
counsel's perspective at the time to pose the question to
petitioner, in light of the aforementioned defense strategy.  (See
Motion, at 29 & Ex. 20; Steward Decl. ¶ 8).

        It is certainly possible that counsel's error ultimately
allowed the government to attack petitioner's credibility in this

1  regard when it might have otherwise been unable to, but this
2  possibility does not meet the standard for finding counsel
3  constitutionally deficient.  "It is not sufficient for the
4  defendant to show that the errors had some conceivable effect on
5  the outcome of the proceeding. . . .  The defendant must show that
6  there is a reasonable probability that, but for counsel's
7  unprofessional errors, the result of the proceeding would have been
8  different."  <u>Strickland</u>, 466 U.S. at 693-94.  Petitioner does not
9  meet this burden.  Though petitioner establishes he may have
10 damaged his own credibility due to counsel's mistake, he has not
11 established that there is a "reasonable probability" that jury
12 would have reached a different result when the mistake is placed in
13 the broader context of the government's case against him.  <u>See</u> <u>Guam</u>
14 <u>v. Santos</u>, 741 F.2d 1167, 1169 (9th Cir. 1984) (finding erroneous
15 tactical decisions by counsel "harmless in light of the
16 overwhelming evidence of guilt").

17         Likewise, petitioner's contention that he was prejudiced
18 by counsel's failure to object to some of the government's
19 questions or that counsel's attempt to rehabilitate him was "half-
20 hearted and missed the point" is without merit.  "[C]ounsel's
21 tactical decisions at trial, such as refraining from cross-
22 examining a particular witness or from asking a particular line of
23 questions, are given great deference and must similarly meet only
24 objectively reasonable standards."  <u>Dows v. Wood</u>, 211 F.3d 480, 487
25 (9th Cir. 2000).  As petitioner's moving papers acknowledge,
26 counsel did lodge objections, both successful and unsuccessful, to
27 the government's questions.  (<u>See</u> Motion, at 28-29).  It is fair to
28 conclude that his subsequent decision regarding when and whether to

lodge objections was strategic.[5]  Petitioner argues that counsel
could have elicited further explanation from him on the stand
regarding the apparent inconsistency in his testimony.  However, he
does not elaborate on the type of questioning counsel should have
pursued or how this additional questioning would have helped
restore his credibility rather than further emphasize for the jury
the appearance that petitioner perjured himself on the stand.
Petitioner's argument, accordingly, is insufficient to overcome the
strong presumption that counsel's performance conformed with the
Sixth Amendment's guarantee of effective assistance.  Strickland,
466 U.S. at 689.

### 4.   Speedy Trial Right

Under the Speedy Trial Act, the trial of a criminal
defendant must commence within seventy days from the filing date of
the indictment, or "from the date the defendant has appeared before
a judicial officer of the court in which such charge is pending,
whichever date last occurs."  18 U.S.C. § 3161(c)(1).  The act
excludes from this period delays caused by "a continuance granted
by any judge . . . if the judge granted such continuance on the
basis of his findings that the ends of justice served by taking
such action outweigh the best interest of the public and the
defendant in a speedy trial."  Id. § 3161(h)(8)(A).

The Court has previously considered and found without
merit petitioner's contention that he did not knowingly and
voluntarily waive his speedy trial rights when he consented to the

_____

[5] The Court has reviewed the Reporter's Transcript of
Proceedings in evaluating petitioner's testimony and questions by
counsel and the government.

stipulation continuing his trial date.  (See Motion, Ex. 12, at
24).[6]  The Court found credible then-counsel's testimony that
defendant consented to continuing the trial as early as December
10, 2001, in order to allow additional time for pretrial
preparation.  (Id.; see also id., Ex. 5 (Declaration of Edward W.
Hall)).  Where a defendant stipulates to the need for additional
time for trial preparation, he cannot subsequently maintain that
continuances give rise to a violation of the Speedy Trial Act.  See
United States v. Shetty, 130 F.3d 1324, 1330 (9th Cir. 1997)
(citing United States v. Palomba, 31 F.3d 1456, 1462 (9th Cir.
1994)).

       Petitioner's argument in the instant motion that his
speedy trial rights waiver was unknowing and involuntary because he
was unaware that he would spend the time afforded him for
additional pretrial preparation incarcerated is similarly without
merit.  As an initial matter, petitioner was clearly on notice that
his pretrial release was conditional.  The record clearly reflects
that he was advised of the conditions of his pretrial release on
December 4, 2001, and that he admitted to engaging in violative
behavior on, among other dates, December 6, 2001, both prior to his
consenting to a continuance.[7]  Petitioner's contention that he was

---

[6] In considering a challenge to the timeliness of a criminal
trial, the Court considers (1) the length of delay, (2) the
reason for the delay, (3) defendant's assertion of his speedy
trial right, and (4) the prejudice caused by the delay.  See
Doggett v. United States, 505 U.S. 647, 651, 112 S. Ct. 2686, 120
L. Ed. 2d 520 (1992).  These "are related factors and must be
considered together with such other circumstances as may be
relevant."  Barker, 407 U.S. at 533.

[7] See Docket No. 12.  See U.S. Pretrial Services' petition
filed January 15, 2002, plus other documentation from Pretrial
Services detailing petitioner's pretrial release violations.

unaware he might be incarcerated, having already engaged in conduct potentially subjecting him to incarceration, is thus unpersuasive.

Petitioner's claim still fails since he has not established prejudice from either of his attorneys' omissions. "The Supreme Court has identified three evils from which the Speedy Trial Clause is designed to protect defendant: (1) oppressive pretrial incarceration; (2) protracted anxiety and concern; (3) impairment of trial defense." United States v. Valentine, 783 F.2d 1413, 1417-18 (9th Cir. 1986); see also Beamon, 992 F.2d at 1114 (same). Petitioner here relies on the first form of prejudice. (See Motion, at 36). The prejudice stemming from pretrial incarceration must be "balanced and assessed" in light of other factors, including "length, reasons, and responsibility for delay." See United States v. Lam, 251 F.3d 852, 860 (9th Cir. 2001) (finding fourteen and one-half month incarceration term not oppressive in light of totality of circumstances). The Court does not find a term of three months an oppressive period of incarceration, particularly when considering that the incarceration would not have been imposed but for the combination of petitioner's consent to continuing his trial and his voluntary violation of the conditions of his pretrial release.

//

//

//

//

//

//

//

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court denies petitioner's Motion to Vacate, Set Aside or Correct Sentence.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order on counsel for all parties in this action and petitioner at her last known place of incarceration.

DATED:   March 3, 2009.


**ALICEMARIE H. STOTLER**
ALICEMARIE H. STOTLER
UNITED STATES DISTRICT JUDGE